Good morning, Your Honor. Sarah Dupree on behalf of the appellant, Kenneth Tiedemann. I'll be taking seven minutes for opening, and if I may, I'd like to reserve three minutes for rebuttal, which will be handled by Rachel Smith. May it please the Court. Mr. Tiedemann is an incarcerated father who challenges a restriction on the number of minutes that he may speak with his sons. He has now spent more than five years diligently litigating his constitutional claims, yet his case comes before this Court again at the pleading stage. Are you still pursuing your Bivens claims against the individuals? Your Honor, we rest on our briefing as to the Bivens claim, and specifically in our reply brief, we concede that the law of this circuit, as well as now the Supreme Court, is against Tiedemann on this issue. However, we preserve the issue for potential writ of certiorari to the Supreme Court for an argument for a good-faith change in the law. But the issues that we'll be discussing today will be specific to the injunctive relief claims. Yeah, well, the Supreme Court doesn't have anything much to do these days anyway, so maybe they'll take that. The issues now at stake here are leave to amend, mootness, and whether Mr. Tiedemann has stated a claim under Turner v. Safley. If I may, I'll begin with leave to amend. Here, naming Tiedemann's current warden would have defeated the sole ground for dismissal, so the District Court abused its discretion when it denied leave to amend. Exhaustion? I think the government concedes that now, but they say it would have been futile. Correct, Your Honor, and they argue that it would have been futile only on the basis of exhaustion. But exhaustion has no bearing on this leave to amend question, and that's for two reasons. First, exhaustion is not a pleading requirement. It is an affirmative defense that the government must prove by presenting evidence at the summary judgment stage. And second, exhaustion requirements as to new defendants would not apply until the time when Tiedemann files his amended complaint, which the denial of leave to amend prevented him from being able to do here. If there are no more questions on leave to amend, I'll move on to the second basis. I guess the question is, where does it get you ultimately if you can't prevail? If it's a bridge to nowhere, where does that get your client? It corrects the District Court's errors, and that vindication of Tiedemann's procedural rights is important in and of itself. He's been litigating this case for five years, and any delays have not been attributable to Tiedemann. So that correction of the District Court's errors and the enforcement of the law of this circuit is itself important here. Do you see a path forward if you're granted leave to amend? Yes, Your Honor, and especially we see that Tiedemann may be able to amend his complaint to add new defendants. But that brings me to our second basis for reversal here, which is that Tiedemann should not have needed leave to amend in the first place because his claims as to the regional director were not moved. So we'd ask that this Court reverse on that basis as well. So what do you say to their argument that the regional director doesn't have the power to change this telephone provision because the wardens have a discretion to grant more than 300 minutes when good cause is shown? This Court should not accept defendants' arguments that a higher-up Bureau of Prison official has no power to direct their subordinates to follow a federal court order. As to their arguments on the regulations, the BOP regulations do not state that wardens have exclusive authority over inmate minutes, and therefore it would be an improper inference for this Court to draw to make that negative inference from the regulations at this stage in the proceeding. So let's get to the substance. Go ahead. On Turner, Your Honor? Yes. So this Court need not decide the Turner inquiry here. We address it because this Court may affirm on any basis that is supported by the record, but affirming dismissal based on Turner is not supported by the record here. This Court has already suggested, and the District Court has held, that Tiedemann stated a claim. If we were to get into Turner, can you just tell us what facts Tiedemann's alleged that would suggest success under that analysis? Yes, Your Honor. Well, here there are additional factual questions that would need to be resolved in order to conduct the Turner inquiry in the first place. For example, here we don't even know why Tiedemann's request for an exception to the 300-minute limit was denied, except on the vague basis that he lacked good cause. And that alone is not enough to show that there is a rational relationship between a legitimate penological interest and the denial of his request for an exception. That's just one of the factual questions that would need to be resolved. Other facts that refute any common-sense connection and support that Tiedemann would, in fact, win on Turner is that other prisons at which Tiedemann was previously incarcerated do not have the 300-minute limit. And he alleges that in his complaint, that he was previously incarcerated in one such facility. He also alleges that the 300-minute limit itself provides for an exception, which is exactly what he requested here, and that there was, as I said, no reasoning in the denials of his request for an exception. In addition, the policy allows for additional minutes to be granted at other times during the year, for example, around the holidays. So that shows that there's no reasonable basis for setting the minute limit, especially as applied to Tiedemann, at 300 minutes. And with that, I'll just return briefly to the mootness point. And I want to address, lastly, the system-wide element. Here, Tiedemann maintains his stake in the litigation. He is still subject to the 300-minute limit that he challenges because that policy is system-wide. And all that's required is that that underlying policy is system-wide. Now, I see that I'm out of time. I'd like to reserve the remainder of my time for rebuttal. Thank you very much. Thank you for your argument. Good morning, Your Honors. Terry Crist with Appalese. This case is moot, and in the alternative, complaint fails to state a claim on which relief can be granted that a denial to an exception to the telephone policy was unreasonable. And we really have two bases for mootness here. The transfer from one facility to another moots his claim first because all the allegations in the existing complaint concern the conditions of confinement in the previous facilities, not the future facility where he currently resides. Well, apparently you keep moving him around. He's been moved four times, if I understand the facts. So why isn't that problem simply solved by giving him leave to amend? Well, this isn't the sort of case where a warden retires and you can simply replace them with a new warden in the case of his Ford. Each warden's discretion is the focus of the complaint here. Yeah, but the warden, after he was first moved or second moved, I can't even keep track of how the Bureau of Prisons does this, one of the wardens denied his application on the ground that he had previously raised the same application before a different warden and therefore he was just re-raising a previously litigated claim, which shows that new discretion was not being exercised. Well, at best, that would show that new discretion was not being exercised by the Tucson warden, assuming the truth of the allegation. And if I recall correctly, the reason was that it appeared to be a duplicate. But there's no reason to think that that's the same decision that a future warden would give. And the complaint focuses mainly on the discretion. Doesn't that strongly suggest that this is basically a system-wide limitation and that the wardens don't really exercise their discretion except in very extreme cases? No, Your Honor. It's anecdotal at best. So one warden might have done that in one case, but that does not plead that every warden would do so in all future cases. And the complaint talks about this. Anecdotal in the sense of that's what actually happened in this case? That's an interesting anecdote. It happened in one prison with one warden, but the complaint does not plead that all wardens were in the habit of doing this. And I think that's what you would need for a system-wide claim. The allegations are about the discretionary denial of exception to the telephone policy, not the 300-minute policy itself. And because the complaint pleaded constitutional violation is about that discretion, essentially the slate is wiped clean when he's transferred to a new facility, and he now has to request from the new warden an exception, and that warden can give a discretionary acceptance or denial. And that's why when pleading the actions of previous wardens, he's not pleaded a violation with future wardens. After the warden makes his or her decision, do they, assuming that was properly done in procedural terms, there is a right of appeal to the regional director, yes? Yes, that's correct. So doesn't that suggest that if we amend to let him go before this warden and that the regional director, who is named, is then the proper party? No, it doesn't. I would liken it to appellate jurisdiction by this court. This court has jurisdiction over an appeal taken from a specific case by the district courts, but this court doesn't have the plenary authority to order other district courts to do things outside of that jurisdiction. In the same way, the regional director does have influence over the telephone policy when there is an administrative remedy appeal from a specific warden, but if there hasn't been that appeal, the regional director under the policy lacks authority to order other wardens to comply with a court order to that exception. Are you really asking us to state that the regional director has no supervisory authority over wardens? My guess is you may have some unhappy regional directors.  This is administrative. It's not simply adjudicatory. So he has the power, does he not, to control the administration of the prison system and those prisons under his or her control? The policies do not give the regional director the plenary authority to order the wardens to do anything. It needs to be circumscribed to the policy. Where does it say that? I don't see the word exclusive in the regulations. No, it doesn't say that specifically, but I think when you read through the policy and just how things are set up, that's the conclusion you would reach. So the warden is given the discretion here, and there's no mention to any other officials, and then the powers given to the regional director are set out and enumerated. So when you have a list of enumerated powers, that leads to the inference that you don't have plenary authority. There would be no reason to enumerate your powers if you had all the powers. Well, if we're talking about a court, that would be one thing, but we're talking about an administrative agency. True, but I think the same inference would apply. And this is a legal determination, not a factual one. Well, actually, I mean, what you're asking us to say is that the regional directors have no authority to direct administrative actions. No. I think that's exactly what your argument is. Our argument is that when the procedures and policies give the regional director authority, then the regional director would have that authority. But in the absence of those... What's your best case for that? Well, we don't have a best case for that. Do you have any case? There, frankly, aren't a lot of cases on this subject, but I think it's just the inference you reach when you see the delegation of responsibilities between the warden and the regional director. And also, this is why, of course, there's no defendant in this case that has the authority to grant relief. Amending the complaint wouldn't solve this problem. As I said before, this isn't a case where we're simply substituting a warden who's retired with a new warden. Every alleged constitutional violation flows from the discretion of the warden. So in addition to amending the complaint to add the new warden, you'd have to add an entirely new lawsuit of claims that you presented your claim to that warden and he denied it in his discretion, and then there was an abuse of discretion. So the discretionary denial by the Tucson warden wouldn't be solved by simply adding in the warden from a new facility. You'd have to add claims against that new warden. And I'm not even sure those would be joinable under Rule 20. They're so different and unconnected to the factual basis in this case. So the district court didn't abuse its discretion by denying relief to amend on that basis. So in the regulations or in other policies that may not be for us, is there a definition of good cause? There are examples of good cause, but there's not a definition. I think when you look at the Overton case that we relied on the merits, that would explain that all we're talking about here is a rational basis for the decision. It's not strict scrutiny. We don't have to show the least restrictive means, just that there's a reasonable relationship between the denial and the legitimate penological interests. And what is the, in this case, what is the legitimate penological interest in restricting communications with the family? The legitimate penological interest would be preserving equality and security within the prison. Giving everyone the same amount of telephone time is an independent basis in equity, but also it preserves prison morale by causing other prisoners to not feel like they've been slighted. And the policy explains- So basically you're saying it's a per se policy with no exceptions? Have you ever granted a good cause for extending telephone time, to your knowledge? That's not in the record, and I don't have independent knowledge of it. But again, the standard here is rational basis. It's not strict scrutiny or even heightened scrutiny. Yeah, I understand. No, but your argument, as Judge Thomas just pointed out, is that the rationale is for a no exception policy. And if that's the case, then why isn't this case, once he's amended, not moved? And why isn't the regional director properly a party? I don't follow why that would be the case. I think, if you don't mind, just to follow up, the basic penological interest you're saying is you want equality of treatment with prisoners, and that suggests a blanket policy without any exceptions. I see. So that may be presumptively true, but it doesn't close the door to there being some exceptions. It's just in this case where he already had 300 minutes, there existed other alternatives. In terms of federal prisons, isn't there a penological interest in keeping communications with the family? That's part of release conditions and so forth. I mean, rehabilitation is founded on establishing relations with the family. I see that I'm out of time. May I answer your question? Certainly. Yes, the policy actually mentions that there are legitimate penological interests for that, and the prison has decided that those are met by other means, by letter writing and in-person meetings and telephone time, which is not completely limited here, is considered to be a secondary way to achieve that goal, again, on a rational basis. Any further questions? Judge Thomas, do you have any questions? I mean, if it's all right, I would like just to ask the government to spend a moment on the motion for judicial notice and just tell us quickly what the relevance is of his conviction to this case. It's just relevant to provide general background. It's customary in these cases to say what the offenses that led to the inmate being incarcerated, and so we thought that that context was necessary and helpful in this case. All right. Thank you. Thanks, Judge Thomas. Thank you for your argument. Thank you. We respectfully request this court affirm. Your rebuttal. May it please the Court, Rachel Smith for the plaintiff appellant, Kenneth Tiedemann. And would you move your microphone just a little down? So there you go. Thank you. Thank you. First off, we've opposed judicial notice of Mr. Tiedemann's conviction. It is not relevant to any of the issues in this case. The government says it's relevant to context but does not explain how that context is relevant here. Moving to the mootness argument, the government asked this court to draw many inferences in their favor to hold that the regional director would have no power to order the warden to carry out injunctive relief. Your honors are correct that nowhere in the policy denies the regional director such authority, and inferring that from the policy would be an inference in the government's favor, which is improper here. The government says there's not a lot of case law on this subject, but this court has repeatedly held that any person who is responsible for ensuring that injunctive relief would be carried out is a proper defendant in a prisoner's case seeking injunctive relief. I'm not sure how central it is to any of the issues we have to decide, but your adversary said there are alternatives like visits by the children, and I think in your complaint you said that's not impractical. Excuse me, it's not practical. Why is that? Yes, so the government on Turner needs to make an evidentiary showing that there are alternatives available to the prisoner. Mr. Tiedemann, as you've noted, has been transferred many, many times, and so implying that visitation is always open to Mr. Tiedemann given that is not a reasonable conclusion to make from the face of the complaint. But regardless, this court only defers to the judgment of prison officials on Turner after they've made an evidentiary showing as to each point of the Turner analysis. That would be required here. Where do his children live? His children are with Mr. Tiedemann's parents in Bishop, California. Lastly, on Turner, Turner is not just rational basis review. The first factor is rational basis review, but the court must also consider the other factors. And as your honors have indicated, the fact that the policy expressly provides for exceptions undermines a common sense connection between denying Mr. Tiedemann additional minutes and a generalized routine argument about prison security. And further, the policy that defendants put forward as providing a rationale for the 300-minute limit does not mention the 300-minute limit at all. So even drawing a connection that that is the rationale, that that is the BOP's rationale for the limit, would be an inference drawn in defendant's favor that is improper at this stage. Unless the court has further questions, we'll rest. Thank you, counsel, and thank you both for your pro bono representations. Very helpful to the court. Thank you all for your arguments today. The case just arguably submitted for decision.
judges: THOMAS, THOMAS, Rakoff